UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| ANGELA R. HUFF, Individually, and as Executrix of the Estate of DAVID W. HUFF,<br><br>    Plaintiffs,<br><br>v.<br><br>AGCO CORPORATION, CARGILL, INCORPORATED, and SOUTHERN STATES SOMERSET COOPERATIVE, INCORPORATED,<br><br>    Defendants. | CIVIL NO. 5:17-CV-354-KKC<br><br>OPINION AND ORDER |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on three motions to dismiss and one motion to remand. For the reasons discussed below, the Court remands this action to Mercer Circuit Court and denies the remaining motions as moot.

**I. Factual Background**

The following facts are drawn from the Plaintiff's complaint. On August 4, 2016, David Huff was killed when the Willmar Wrangler 4500 he was operating malfunctioned and overturned, pinning him underneath. (Am. Compl. ¶¶ 20–29.) A Willmar Wrangler 4500 is a front-end loader with an articulated frame and an 83-inch-long by 40.5-inch-wide by 39.5-inch-deep bucket. (Am. Compl. ¶ 23.) The bucket on the loader operated by David Huff was original, correctly mounted, and broke off while in use. (Am. Compl. ¶¶ 24–26.) The bucket demonstrated wear, as a result of a manufacturing defect, which caused it to break off its mounting. (Am. Compl. ¶¶ 30, 32.) The loader also lacked warnings that the bucket or mounting system could fail and cause serious injury or death. (Am. Compl. ¶ 35.) The

Kentucky Labor Cabinet Occupational Safety and Health Program conducted an investigation of the incident and issued a report which referred to the Willmar Wrangler 4500 as a 2000 (year). (Am. Compl. ¶ 39.) The report does not contain any information as to how the Willmar Wrangler 4500 was a 2000 (year) and whether that references the date of manufacture, sale, distribution, or design. (Am. Compl. ¶ 49.)

Southern States Somerset was the original purchaser and owner of the Willmar Wrangler 4500 and transferred it to David Huff's employer on March 18, 2016. (Am. Compl. ¶¶ 16–17.) AGCO acquired Willmar Manufacturing from Cargill in 1998 pursuant to a Sale and Purchase of Assets Agreement, and AGCO is the successor in interest to Willmar Manufacturing. (Am. Compl. ¶¶ 11–13.) The Sale and Purchase of Assets Agreement between Cargill and AGCO lists certain excluded liabilities which AGCO did not assume from Cargill. (Am. Compl. ¶ 14.) They include any liabilities relating to Cargill's violation of laws or regulations, arising out of expressed or implied warranties made by Cargill, or based on any product sold or manufactured by Cargill prior to the closing date of the sale. (Am. Compl. ¶ 15.)

**II. Procedural History**

A number of motions are pending before the Court, and therefore a review of the procedural history is necessary to establish the current posture of this action. Plaintiff Angela Huff originally commenced this products liability action in Mercer Circuit Court on August 2, 2017 against Defendants AGCO and Cargill. (Compl., DE 1-1.) AGCO and Cargill removed this action on August 25, 2017, invoking this Court's diversity of citizenship jurisdiction, 28 U.S.C. § 1332. (DE 1.) Shortly thereafter, Cargill filed its first motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). (DE 8.) Rather than filing a response to motion, Huff, invoking Rule 15(a)(1), filed an amended complaint without leave of the Court. (DE 12.) In her amended complaint, Huff joined Southern States Somerset as a defendant.

(DE 12.) She identified Southern States Somerset as a Virginia business entity and asserted that the Court retained diversity of citizenship jurisdiction over the action. (Am. Compl. ¶ 7–8, DE 12.)

Huff asserts the following claims in her amended complaint. Count I alleges that Cargill and AGCO are strictly liable for defective design and failure to warn. (Am. Compl. ¶¶ 51–59.) Count II alleges that Cargill and AGCO were negligent in failing to warn David Huff of the propensity of the Willmar Wrangler 4500 to fail. (Am. Compl. ¶¶ 60–69.) Count III alleges that Cargill and AGCO were negligent designing and manufacturing the Willmar Wrangler 4500 (Am. Compl. ¶¶ 70–74.) Count IV alleges that Cargill and AGCO violated statutes and regulations in designing, producing, distributing, and marketing the Willmar Wrangler 4500, constituting negligence *per se*. (Am. Compl. ¶¶ 75–83.) Count V alleges that Cargill and AGCO breached express warranties made to David Huff that the Willmar Wrangler 4500 was safe and fit for its intended use and free from defects. (Am. Compl. ¶¶84–96.) Count VI alleges breach of implied warranties of merchantability and fitness for particular purpose by Cargill and AGCO. ((Am. Compl. ¶¶ 97–105.) And, finally, Count VII alleges that Southern States Somerset was negligent in maintaining the Willmar Wrangler 4500 used by David Huff. ((Am. Compl. ¶¶ 106–110.)

Cargill filed a second 12(b)(6) motion to dismiss for failure to state a claim in response to Huff's amended complaint. (DE 16.) In their motion, Cargill attached two exhibits cited by Huff in her amended complaint: the 1998 Asset Purchase Agreement between AGCO and Cargill and the Kentucky Labor Cabinet Occupational Safety and Health Program Report on David Huff's death.[1] In Angela Huff's response to the motion to dismiss, she argues that

---

[1] Angela Huff claims to have received the report for the first time when it was included as an attachment to Cargill's first motion to dismiss. (Am. Compl. ¶ 40, DE 12.)

inclusion of the exhibits has converted its 12(b)(6) motion to a Rule 56 motion for summary judgment. Accordingly, she cross-moved to stay Cargill's motion pending discovery. (DE 22.)

Southern States Somerset has also filed a motion to dismiss, arguing that the claims against it are barred by the exclusivity provision of the Kentucky Workers' Compensation Act, Ky. Rev. Stat 342.690. (DE 27.) Huff has filed a response in which she again moves for the Court to convert the motion into one for summary judgment and asks the Court to stay the motion pending discovery. (DE 34.)

Finally, Huff has filed a motion for remand for lack of subject matter jurisdiction, (DE 32), based on Southern States Somerset's representation in its answer that it is Kentucky corporation, (Answer ¶ 5, DE 27). Huff also requests a stay of the Defendants' motions to dismiss on the basis that this Court lacks subject matter jurisdiction. The Defendants' have filed responses to the motion to remand, and Huff has filed a reply. Replies and responses have been filed on all of the motions discussed above and these matters are now ripe for consideration.

**III. Analysis**

The first motion for the Court to consider is Huff's motion to remand (DE 32) because it asserts that the Court lacks jurisdiction over this matter. Federal district courts have limited subject matter jurisdiction. U.S. Const. art. III, § 2, cl. 1. That jurisdiction extends only over claims arising under federal law, 28 U.S.C. § 1331, and civil actions between citizens of different states, or between a state or its citizens and a foreign state or its citizens, where the amount in controversy exceeds $75,000, 28 U.S.C. § 1332. Diversity of citizenship jurisdiction requires complete diversity between all plaintiffs and all defendants. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996)). Thus, in multi-party cases, the "presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original jurisdiction over the entire action." *Exxon*

*Mobil Corp v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) (citing *Strawbridge v. Curtiss*, 3 Cranch 267 (1806); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 375 (1978)).

In her amended complaint, Huff invokes this Court's diversity jurisdiction, asserting that she and the decedent are citizens of Kentucky, that AGCO and are Delaware businesses, and that Southern States Somerset is a Virginia business. (Am. Compl ¶¶ 1–2, 5–7.) This assertion was based on a report from the Kentucky Secretary of State which identified Southern States Somerset as a foreign corporation with its principal office in Richmond, Virginia. (DE 32-1.) In its answer, Southern States Somerset stated that its principal place of business is in Kentucky. (Answer ¶ 5, DE 27.) Similarly, in its Rule 7.1(a) corporate disclosure, Southern States Somerset stated that it is incorporated in Virginia with its principal place of business in Somerset, Kentucky. (DE 26.) Thus, it is uncontested that Southern States Somerset is a citizen of Virginia and Kentucky, 28 U.S.C. 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business . . . ."), and, if properly joined as a defendant, complete diversity no longer exists. Huff seeks remand on this basis.

A. *Amendment of the complaint*

Angela Huff filed her amended complaint, without seeking leave of the Court, precisely twenty-one days after Cargill filed its first motion to dismiss. In a typical case, this would permissible under Federal Rule of Civil Procedure 15, which permits a party to "amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(b). But, because Huff's amended complaint added a defendant, the well-recognized conflict between Rule 15 and Rule 21 arises. 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1479 (3d ed.) ("The application of the liberal amendment policy embodied in Rule 15(a) occasionally comes into conflict with another federal rule, particularly in the context of amendments as of course under Rule

5

15(a)(1).")."). Rule 21 provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. The question is whether, when a party seeks to amend its pleadings to join a party within the twenty-one day window provided by Rule 15, may the amendment be done as a matter of course, or is an order of the court required?

Court's remain divided as to the resolution of this conflict. One way in which courts have attempted to reconcile the rules is through application of the canon that specific provisions trump general provisions. Some courts have found that Rule 21, because it deals with adding parties, is more specific compared to the amendment procedures of Rule 15. *See, e.g.*, *Cornelia Light & Rick Light v. Guidant Corp*, No. 3:07–CV–35–H, 2007 WL 2425940, at *2 (W.D. Ky. Aug, 14, 2007) ("Rule 21, which governs the addition of parties, is more specific than Rule 15, which governs complaint amendments generally.") The leading commentary on the federal rules, however, has questioned this reasoning and suggested the opposite interpretation:

> [I]t is not obvious that Rule 21 is more specific than Rule 15. It might be argued that Rule 21 is the general provision since it deals in broad terms with dropping and adding parties by motion, and Rule 15(a) is a more specific provision because it sets forth a particular means by which a party may attempt to drop or add parties—by an amendment to the pleadings.

Wright & Miller, *supra* § 1479. The former approach, in which Rule 21 controls, has been adopted by the Seventh Circuit. *Williams v. U.S. Postal Serv.*, 873 F.2d 1069, 1072 n.1 (7th Cir. 1989) ("Although defendants had not filed a responsive pleading here, a plaintiff cannot add new defendants through a complaint amended as a matter of course.") (internal citations omitted). The Second, Fourth, Fifth, and Tenth Circuits have adopted the latter approach and held that Rule 15(a)(1) governs. *Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010) ("While some courts have concluded that Rule 15(a) does not apply to amendments seeking to add parties, most courts, including this one, have concluded otherwise.") (citations omitted); *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 31

6

F.3d 1015, 1018 (10th Cir. 1994) ("Because the amendment was made before defendants had filed a responsive pleading, plaintiffs were entitled to the amendment as a matter of right."); *Washington v. N.Y.C. Bd. of Estimate*, 709 F.2d 792, 795 (2d Cir. 1983) (finding district court abused its discretion by denying plaintiff's attempt to amend his complaint to add defendants within Rule 15(a)'s twenty-one day window); *McLellan v. Miss. Power & Light Co.*, 526 F.2d 870, 873 (5th Cir. 1976) ("Which rule takes precedence if a party attempts to drop or add parties by an amended pleading filed before a responsive pleading is served? . . . The District Court in this case gave precedence to Rule 21. We reach the opposite conclusion."), *vacated in part on other grounds*, 545 F.2d 919 (5th Cir. 1977). In an unpublished order, the Sixth Circuit found that "Rule 15(a) permits a plaintiff to file an amended complaint, without seeking leave from the court, at any time before a responsive pleading is served." *Broyles v. Correctional Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241, at *3 (6th Cir. Jan. 23, 2009). While not binding, the decision is persuasive. *See United States v. Keith*, 559 F.3d 499, 505 (6th Cir. 2009) ("Although unpublished decisions do not have precedential authority, they may be considered for their persuasive value . . . .") (internal citations omitted). The Court agrees with the majority view; a party may amend its pleadings to add a party without leave of the court within the time allowed by Rule 15(a)(1). Angela Huff therefore did not need to seek leave to add Southern States Somerset as a defendant.

B. *Statutory discretion to deny or permit joinder*

Resolving the conflict between Rule 15(a) and Rule 21 is not the end of this analysis. Pursuant to 28 U.S.C. § 1447(e), because Southern States Somerset's "joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." *See Mayes v. Rapoport*, 198 F.3d 457, 462 n.11 (10th Cir. 1999) ("[A] district court has authority to reject a post-removal joinder that implicates

7

28 U.S.C. § 1447(e), even if the joinder was without leave of court."); *Premium Fin. Grp., LLC v. MPVF LHE Lexington LLC*, No. 5:13–CV–362–KKC, 2014 WL 112308, at *3 (E.D. Ky. Jan. 9, 2014) ("[I]t is irrelevant here that [plaintiff] amended its complaint as a matter of course, because 'even though the plaintiffs did not need the court's permission to amend the complaint, the court may deny their attempt to join an additional defendant whose joinder would destroy subject matter jurisdiction.'") (quoting *Bridgepointe Condominiums, Inc. v. Integra Bank Nat. Ass'n*, No.08-475-C, 2009 WL 700056, at *1. While no party raised the fact that Southern States Somerset was a non-diverse party initially, the Court must still determine if joinder is appropriate under § 1447(e) now that it is apparent that joinder destroys subject matter jurisdiction. *Mayes*, 198 F.3d at 462 n.11.

The Sixth Circuit has identified four factors for district courts to consider in making its discretionary determination under 28 U.S.C. § 1447(e): "(1) the extent to which the proposed amendment's intent was to destroy federal jurisdiction, (2) whether the plaintiff was dilatory in filing the motion to amend, (3) whether the plaintiff would be significantly injured if the motion to amend were denied, and (4) any other equitable factors." *Telecom Decision Makers, Inc. v. Access Integrated Networks, Inc.* 654 F. App'x 218, 221 (citing *Bailey v. Bayer CropScience, L.P.*, 563 F.3d 302, 309 (8th Cir. 2009); *Mayes*, 198 F.3d at 462–63). The first factor is "'of paramount importance,' because these factors are intended to determine whether 'the primary purpose of the proposed joinder is to oust the case from the federal forum." *Premium Fin. Grp.* 2014 WL 112308, at *4 (quoting *Bridgepointe Condos, Inc.*, 2009 WL 700056, at *2).

Angela Huff's intent in filing the amended complaint was not to defeat diversity jurisdiction. In her amended complaint, Huff alleged that Southern States Somerset was

8

a Virginia corporation. This was based on information listed in the Kentucky Secretary of State identifying Southern States Somerset as a foreign corporation with it principal office in Richmond, Virginia. Angela Huff did not seek remand until Southern States Somerset filed its answer and corporate disclosure statement stating that its principal place of business was in Kentucky. Defendants argue that Huff's claim against Southern States Somerset is not viable and that this is evidence that joinder was intended to destroy diversity. That argument is misguided since Huff was unaware that Southern States Somerset was a non-diverse defendant at the time she amended here complaint. Thus, the first factor weighs heavily in favor of remand.

Huff's dilatoriness is more difficult to assess. Some courts have assessed the timeliness of the amendment in relation to commencement of the action and found that delay until after removal is dilatory. *See Adkins v. Advocat, Inc.*, No. 14-152-HRW, 2015 WL 1802838, at *4 (E.D. Ky. April 17, 2015) ("With regard to whether Plaintiff was dilatory in seeking leave to amend his Complaint, it does appear that he tarried. Despite being aware of Sarah Willis when the initial complaint was filed, Plaintiff filed this motion to amend two months later, and not until after removal."). Other courts have measured dilatoriness from the date of removal. *Nazario v. Deere & Co.*, 295 F. Supp. 2d 360, 364 (S.D.N.Y. 2003). (stating that a delay of five months after removal "is highly question for purposes of this factor"). Both of these approaches present a fair way to measure dilatoriness and therefore this factor is neutral.

Huff will face significant prejudice if joinder is denied because she will be forced to litigate this suit in two separate forums in order to obtain complete relief. *Premium Fin. Grp.* 2014 WL 112308, at *4. Thus, the third factor also favors remand.

Finally, the Court must consider any other equitable factors. Here, the diverse Defendants, Cargill and AGCO, have "a significant interest in processing in a federal

forum" to avoid "[t]he insidious home-court advantage [which] diversity jurisdiction seeks to neutralize." *Adkins*, 2015 WL 1802838, at *4. The Defendants also urge the Court to consider the viability of Huff's claim, similar to a fraudulent joinder analysis. While that doctrine does not apply directly, as it pertains to joinder occurring pre-removal, it should be considered in the § 1447(e) analysis. *See Mayes*, 198 F.3d at 463 ("[T]he fraudulent joinder doctrine can be yet another element of the district court's 'flexible, broad discretionary approach' to resolving a post removal question of whether a nondiverse defendant should be joined under Section 1447(e).") (quoting *Gum v. General Elec. Co.*, 5 F. Supp. 2d 412, 414 (S.D. W. Va.)). Defendants carry a heavy burden when seeking to invoke fraudulent joinder; a plaintiff need only show that there is "arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)). Defendants claim that Southern States is immune from liability under the exclusive remedy provision of Kentucky's workers' compensation law, Ky. Rev. Stat. § 342.690(1), and the "up-the-ladder" immunity given to contractors under Ky. Rev. Stat. § 342.610(2). Huff makes a colorable argument that the immunity provision does not apply because Southern States Somerset did not perform regular or recurrent work. In determining whether a contractor is entitled to "up-the-ladder" immunity, courts must consider "[f]actors relevant to the 'work of the . . . business,' include[ing] its nature, size, and scope as well as whether it is equipped with the skilled manpower and tools to handle the task the independent contractor is hired to perform," *General Elec. Co. v. Cain*, 266 S.W.3d 579, 588 (Ky. 2007). A full balancing of these factors would require the Court to go beyond its limited role in assessing whether the claims are colorable.

To summarize, the Court finds that the first and third factors weigh in favor of joinder and remand, whereas the fourth factor weighs in favor of denying joinder and retaining jurisdiction based on the diverse Defendants' interest in a federal forum. The third factor is neutral. Most significant to this analysis is that Huff was ignorant of the fact that Southern States Somerset was a non-diverse defendant when she amended her complaint. Accordingly, these factors weigh in favor of joinder and remand.

**IV. Conclusion**

For the reasons discussed above, the Court **HEREBY ORDERS** that:

(1) the Plaintiff's motion to remand (DE 32) is **GRANTED**;

(2) this action is **REMANDED** to the docket of the Mercer Circuit Court;

(3) all remaining motions are **DENIED** as moot;

(4) this case is **STRICKEN** from the Court's active docket.

Dated May 8, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY